1   Daniel Cooper (SBN 153576)
    daniel@sycamore.law
2   Jesse C. Swanhuyser (SBN 282186)
    jesse@sycamore.law
3   SYCAMORE LAW, INC.
    1004 O'Reilly Avenue, Ste. 100
4   San Francisco, CA 94129
    Tel: (415) 360-2962

5   Benjamin Harris (SBN 313193)
    ben@lawaterkeeper.org
6   LOS ANGELES WATERKEEPER
    120 Broadway, Suite 105
7   Santa Monica, CA 90401
    Tel: (310) 394-6162
8   Fax: (310) 394-6178

9   Attorneys for Plaintiff
    LOS ANGELES WATERKEEPER
10
11  Ruben Castellón (SBN 154610)
    rcastellon@raflawgroup.com
12  Anna Le May (SBN 258312)
    alemay@raflawgroup.com
    RAF LAW GROUP
13  811 Wilshire Blvd., Suite 1050
    Los Angeles, CA 90017
14  Tel:   (213) 623-7515
    Fax:   (213) 532-8984
15
16  Attorneys for Defendant
    ANGELUS WESTERN
    PAPER FIBERS, INC.
17

JS-6

18                  **UNITED STATES DISTRICT COURT**

19                  **CENTRAL DISTRICT OF CALIFORNIA**

20   LOS ANGELES WATERKEEPER, a          Case No. 2:21-cv-9468-PA
21   public benefit non-profit corporation,

22              Plaintiff,               **CONSENT DECREE AND ORDER**

23       vs.

24   ANGELUS WESTERN PAPER FIBERS,       (Federal Water Pollution Control Act,
25   INC., a California corporation,      <u>33 U.S.C. § 1251</u>, *et seq.*)

26              Defendant.

27

28

**WHEREAS**, Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Santa Monica, California;

**WHEREAS**, LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal, and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Angelus Western Paper Fibres, Inc. ("Angelus" or "Defendant") owns and operates an industrial facility at 2474 Porter Street in Los Angeles, with additional industrial activity conducted nearby at the north-east corner of Porter Street ("Facility");

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-57-DWQ as amended on November 6, 2018 ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, on September 10, 2021, LA Waterkeeper served a notice of intent to sue ("60-Day Notice Letter") on Angelus;

**WHEREAS**, on December 7, 2021, LA Waterkeeper filed a complaint against Angelus in the Central District of California, Civil Case No. 2:21-cv-9468 ("Complaint");

**WHEREAS**, Plaintiff's 60-Day Notice Letter and Complaint alleged violations of the General Permit and CWA for Defendant's discharges of pollutants into storm drains and surface waters, including the Los Angeles River and the Pacific Ocean ("Receiving Waters");

**WHEREAS**, Angelus denies all allegations set forth in the 60-Day Notice Letter and Complaint;

**WHEREAS**, Plaintiff and Defendant (collectively "Settling Parties" or "Parties," individually a "Party"), without either adjudication of Plaintiff's claims or any admission by Defendant of any alleged violation, believe it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by the Defendant pursuant to this Consent Decree shall be made in compliance with applicable federal, state and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS**:

1.  The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, <u>33 U.S.C. § 1365(a)(1)(A)</u>.

2.  Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, <u>33 U.S.C. § 1365(c)(1)</u>, because the Facility at which the alleged violations are taking place is located within this District.

3.  The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, <u>33 U.S.C. § 1365</u>.

4.  LA Waterkeeper has standing to bring this action.

5.  The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, and/or enforcing the terms of this Consent Decree.

## I.  OBJECTIVES

6.  It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by

LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the Clean Water Act.

7.   In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the Clean Water Act at the Facility.

## II.   AGENCY REVIEW AND CONSENT DECREE TERM

### A.  Agency Review of Consent Decree

8.   Agency Review. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States Environmental Protection Agency (the "Federal Agencies"), within five (5) business days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Defendant. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties shall meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

9.   Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5.

10. Entry of Consent Decree. Following expiration of the Federal Agencies' 45-day review period, Plaintiff shall submit the Consent Decree to the Court and request entry.

### B.  Effective Date and Term of Consent Decree

11. Effective Date. The Effective Date of this Consent Decree shall be the date of entry by the Court. Angelus shall begin implementation of Best Management

Practices required under this Consent Decree upon expiration of the forty-five (45) day review period.

12. Term & Termination. This Consent Decree shall terminate the later of: (i) three (3) years from the Effective Date; (ii) until the conclusion of any proceeding to enforce the Consent Decree initiated prior to three (3) years after the Effective Date; or (iii) until the completion of any payment or other affirmative duty required by this Consent Decree.

## III.    FACILITY DESCRIPTION

13. The Facility's primary industrial activity is paper product recycling (primarily carboard and newsprint), which includes receiving, sorting, shredding, baling, and storing recyclable materials. The Facility also receives and stores some recyclable metal materials.

14. The Facility consists of the "Main Yard" located at 2474 Porter Street, and an "Auxiliary Yard" located at the north-east corner of Porter Street. The Main Yard and Auxiliary Yard are depicted in orange and green, respectively, in Exhibit A.

15. Angelus conducts some industrial activities on a portion of Porter Street such as using forklifts to move industrial materials between the Main and Auxiliary Yards.

16. The Main Yard is equipped with multiple surface drains, which are connected to underground sumps that collect storm water that then flows by gravity or by sump pump to discharge points at the south-west and north-west corners. The two (2) discharge points from the Main Yard are depicted on Exhibit B as "DP1" and "DP2."

17. All storm water from the Auxiliary Yard is directed to a single discharge point, depicted on Exhibit B as "DP3."

## IV.   COMMITMENTS OF THE PARTIES

### A.   Discharge Prohibition

18. Any unauthorized non-storm water discharge, as defined in the General Permit, from the Facility shall be a violation of this Consent Decree.

### B.   Storm Water Pollution Prevention Plan

19. <u>SWPPP Revision</u>. Angelus shall update its Storm Water Pollution Prevention Plan ("SWPPP") and submit it to Plaintiff within thirty (30) calendar days of the Effective Date.

20. The updated SWPPP shall contain the following elements:

a.   a pollutant source assessment, including all elements required by Section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

b.   a description and narrative assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by Section X.G.1 and X.G.2 of the General Permit;

c.   descriptions of all BMPs, including those required by this Consent Decree, in accordance with Section X.H.4 of the General Permit;

a.   a set of site maps, including at least one (1) for the Main Yard and one (1) for the Auxiliary Yard, that comply with Section X.E of the General Permit; and

b.   a Monitoring Implementation Plan as required by Sections XI and X.I of the General Permit, which shall incorporate all monitoring requirements detailed in paragraphs 39 through 47 of this Consent Decree.

21. <u>SWPPP Review</u>. Plaintiff shall have thirty (30) calendar days from receipt of the updated SWPPP described in paragraphs 19 and 20 to propose any

modifications or additions. Defendant shall incorporate Plaintiff's modifications or additions to the updated SWPPP within thirty (30) calendar days of notification of proposed changes, or justify in writing why any changes are not incorporated.

22. <u>SWPPP Revisions and Updating</u>. During the term of this Consent Decree, Angelus shall revise and update the Facility's SWPPP and/or site maps within thirty (30) calendar days of any change(s) that may influence or affect storm water pollution control at the Facility, e.g., obtaining new information regarding pollutant sources, moving a discharge or sampling point, modifying the topography of the site so as to change a drainage area, or removing or adding structural BMPs. Angelus shall submit the revised Facility SWPPP and/or site maps to Plaintiff, and upload the revised version to the Stormwater Multiple Application and Report Tracking System ("SMARTS") database.

23. Plaintiff may provide comments to, or seek clarification of, any revised Facility SWPPP and/or site maps. Plaintiff shall have thirty (30) calendar days from receipt of a revised SWPPP and/or site maps to propose any modifications or additions. Angelus shall incorporate Plaintiff's modifications or additions to the revised SWPPP and/or site maps within twenty-one (21) calendar days of notification of proposed changes, or justify in writing why any changes are not incorporated.

24. In the event of any dispute regarding the timing or adequacy of Angelus' updates or revisions to the Facility' SWPPP and/or site maps, either Party may invoke the Dispute Resolution procedures set out in Section V of this Consent Decree.

**C.   Storm Water Pollution Controls**

25. On or before the Effective Date, Angelus shall enclose the entire perimeter of the Main Yard and Auxiliary Yard with concrete berms or curbs sufficient to prevent storm water discharges from any point other than those discharge points designated in the Facility's SWPPP.

26. On or before the Effective Date, Angelus shall relocate the metal wall, located immediately to the west of where materials are fed to the conveyor in the Main Yard, to connect to the concrete curb.

27. <u>Filter Installation & Maintenance</u>. Angelus shall install filter socks inside the Facility at the inlets for DP1 and DP2 and inside the berms or curbs referenced in paragraph 25 for DP3. Filter socks shall be installed in advance of any forecast rain event where there is a greater than 50% chance of 0.1 inches or more of rain (as predicted at www.wunderground.com). The purpose of the filter socks is to limit pollutant concentrations in storm water discharges to meet the numeric limits in Table 1 (below). Filter socks must be broad-spectrum, capable of removing the full range of industrial storm water pollutants at the Facility, and include, at a minimum, biochar and/or zeolite media. In the event Angelus adds any discharge points during the term of this Consent Decree, it shall install such filter socks inside the Facility at the inlet(s) of any additional discharge point(s). In the event that Angelus installs a treatment system, or BMPs that prevent storm water discharge(s) from the Facility, Angelus may discontinue the use of filter socks.

28. <u>Debris Screening</u>. Except at vehicle access points and where a solid wall constitutes the Facility's perimeter, e.g., the Main Yard's western edge, Angelus shall install fine mesh screening no larger than U.S. Mesh 8 (or equivalent) along the entire perimeter of the Facility sufficient to preclude the escape of debris. The screening shall completely cover all non-solid (e.g., chain link) perimeter fences from a minimum height of six (6) feet to ground level. For purposes of this Consent Decree, debris shall include all paper, cardboard, and similar material on the property or arising from operations at the Facility and visible to the eye ("Debris"). The Debris screening shall be installed, and thereafter maintained, on or before the Effective Date.

29. <u>Mechanical Sweeper(s)</u>. On or before the Effective Date, and subject to the force majeure provision contained in paragraph 86, Angelus shall acquire and then use

a mechanized PM10-efficient sweeper that is certified by the South Coast Air Quality Management District. Alternatively, Angelus may acquire and then use a Tenant M20, with the vacuum wand feature, and/or the Advance SW8000 Rider Sweeper, with the litter vac feature.

30. Mechanized Sweeping. During the term of this Consent Decree, and subject to the force majeure provision contained in paragraph 86, at least three (3) times per day during which industrial activities are conducted at the Facility ("Operating Day"), Angelus shall conduct sweeping using the mechanized sweeper(s) referred to in paragraph 29 at the Main Yard and the Auxiliary Yard. Sweeping must include all floor areas, including roofed and un-roofed areas, that are accessible to the mechanized sweeper(s).

31. Manual Sweeping. During the term of this Consent Decree, at least three (3) times per Operating Day, Angelus shall conduct manual sweeping of the Main Yard and the Auxiliary Yard in all floor areas, including roofed and un-roofed areas, not swept by the mechanical sweeper.

32. Sweeping Porter Street. Angelus shall ensure that Porter Street is swept at least two (2) times per week during the term of this Consent Decree using a mechanical sweeper from the eastern extent of the Auxiliary Yard to the Santa Fe Avenue intersection as depicted in purple at Exhibit C. Angelus shall maintain Porter Street sweeping logs demonstrating compliance with this provision. Sweeping logs shall include, at a minimum, the date and time each sweeping is completed, as well as the party (i.e., Angelus, a contractor, or the City of Los Angeles) completing the street sweeping for each date.

33. Rain Gauge/Sensor. Angelus shall install an electronic rain gauge or sensor at the Facility on or before the Effective Date of this Consent Decree. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches,

and record start/stop times for all rain events. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree.

34. <u>Ongoing Obligation</u>. Angelus has an ongoing obligation to evaluate the effectiveness of BMPs implemented at the Facility. Angelus shall use the results of storm water monitoring data, inspections, and observations to assist with its ongoing evaluation of the effectiveness of BMPs.

**D.    Inspections**

35. <u>BMP Maintenance & Inspections</u>. Beginning on the Effective Date, Angelus shall maintain all BMPs (and related equipment) at the Facility in good operating condition, and shall repair any damaged or degraded BMPs (and related equipment) within seventy-two (72) hours subject to the force majeure provision contained in paragraph 86. On a monthly basis (at approximately 30-day intervals) between October 1 and April 30 of each Reporting Year during which this Consent Decree is in effect, Angelus shall complete an inspection of all BMPs (and related equipment) ("Monthly BMP Inspection"). Angelus shall record its observations from these inspections on its Monthly Visual Observation Form, which shall comply with General Permit section XI.A.3, and include a description of the status of each BMP (or related equipment).

36. <u>Former Drainage Area 3 Inspections</u>. During the first two (2) calendar years of this Consent Decree, when Angelus collects storm water samples, it shall inspect Former Drainage Area 3 and its associated discharge point to ensure that the roof installed over this area prevents the discharge of storm water from the area under the roof. Angelus shall document this inspection using a date and time stamped photo demonstrating that no water is leaving the Facility from this area.

37. <u>Perimeter Inspections</u>. Angelus shall inspect the perimeter ("Perimeter Inspection") of both the Main Yard and the Auxiliary Yard at least once per week to identify areas where the fine mesh screening (referred to in paragraph 28) may have

been damaged. Angelus shall immediately make any and all repairs necessary to prevent the escape of Debris subject to the force majeure provision contained in paragraph 86. Angelus shall complete a log for each Perimeter Inspection, which shall include the name of the person conducting the inspection, the date and time of the inspection, identification of any area(s) that have been damaged, and a description of remedial action(s) taken (if any).

38. <u>Sweeping BMP Inspections</u>. Angelus shall conduct inspections to assess and document the effectiveness of sweeping BMPs described in paragraphs 30 and 31. Inspections shall occur on: (i) a weekly basis between October 1 and April 30 during the term of this Consent Decree ("Weekly Wet Season Sweeping Inspections"); (ii) a monthly basis between June 1 and September 30 during the term of this Consent Decree ("Monthly Dry Season Sweeping Inspection"); and (iii) on any Operating Day preceding any day on which there is a greater than 50% chance of rain of 0.1 inches or greater, as predicted on www.wunderground.com ("Pre-Rain Event Inspections"). During each Weekly Wet Season Sweeping Inspection, Monthly Dry Season Sweeping Inspection, and Pre-Rain Event Inspection, Angelus shall take date and time stamped photos at each of the points identified in Exhibit D.

### E.    Storm Water Monitoring

39. <u>Sample Collection</u>. Angelus shall collect storm water samples at all discharge points in the then-effective SWPPP (i.e., the SWPPP containing the most recent revisions per paragraph 22), which initially includes DP1, DP2, and DP3, during each Qualifying Storm Event (as defined in the Industrial General Permit) during the 2022-2023 Reporting Year.  Beginning with the 2023-2024 Reporting Year, Angelus may reduce sample collection and analysis to a total of four (4) storm water samples from Qualifying Storm Events during each Reporting Year (July 1 – June 30) per General Permit section XI.B.2, including specifically: two (2) storm water samples from QSEs between July and December, and two (2) storm water

samples from QSEs between January and June.  In the event Angelus adds one or more discharge points anywhere at the Facility during the term of this Consent Decree, the sampling collection/analysis requirements contained in this Consent Decree shall apply to such new discharge point(s).  Angelus shall not be responsible for collecting storm water samples at discharge points from which no storm water is discharged.

40. The discharge of any storm water from the Facility at any point other than those discharge points identified in the Facility's then-effective SWPPP (i.e., the SWPPP containing the most recent revisions per paragraph 22) is a violation of this Consent Decree.

41. Angelus shall, at a minimum, analyze all storm water samples for the parameters identified in Table 1.

TABLE 1

| Parameter | Numeric Limit | Source |
|---|---|---|
| pH | 6.5 – 8.5 SU | Basin Plan |
| oil & grease | 15 mg/L | EPA Benchmark |
| total suspended solids | 100 mg/L | EPA Benchmark |
| iron | 1.0 mg/L | EPA Benchmark |
| aluminum | 0.75 mg/L | EPA Benchmark |
| copper (total) | 0.06749 mg/L | TMDL/NEL |
| lead (total) | 0.094 mg/L | TMDL/NEL |
| zinc (total) | 0.159 mg/L | TMDL/NEL |
| chemical oxygen demand | 120 mg/L | EPA Benchmark |

42. Angelus shall, in addition to parameters identified in Table 1, analyze all storm water samples for additional pollutants, if any, identified in a pollutant source assessment conducted as part of revising the Facility's SWPPP.

43. Exceedance. For the purposes of this Consent Decree, an exceedance ("Exceedance") is where the concentration of any pollutant in any storm water sample from the Facility exceeds any numeric limit contained in Table 1, or where sampling event observations pursuant to paragraph 47 establish the presence of Debris.

44. Angelus shall provide LA Waterkeeper with all storm water sampling data within fourteen (14) calendar days of its receipt from the laboratory during the term of this Consent Decree.

45. <u>Certified Laboratory</u>.  Except for pH samples, Angelus shall have all storm water samples collected pursuant to this Consent Decree delivered to a California state certified environmental laboratory for analysis within the time needed for analysis within laboratory method allowable hold times. The laboratory shall thereafter conduct analysis sufficient to detect individual constituents at or below the concentrations set forth in Table 1.

46. <u>Monthly Visual Observations</u>. Angelus shall conduct monthly visual observations per the General Permit section XI.A.1 to ensure adequate BMP implementation and effectiveness. Angelus shall maintain logs for all monthly visual observation events per General Permit section XI.A.3.

47. <u>Sampling Event Observations</u>. Angelus shall conduct sampling event visual observations per the General Permit section XI.A.2 to ensure adequate BMP implementation and effectiveness. Angelus shall maintain logs for all sampling event visual observations per General Permit section XI.A.3. Sampling event observation logs must contain a narrative description regarding the presence of Debris (if any), as well as date and time stamped photos of storm water collected prior to being deposited into any laboratory bottle.

## F.    Action Plans

48. <u>Action Plans</u>. In the event of two (2) or more Exceedances in any Reporting Year during the term of this Consent Decree, Angelus shall prepare and submit to LA Waterkeeper an action plan ("Action Plan") within thirty (30) calendar days of receipt of the laboratory report or the observation of Debris per paragraph 47 establishing the Exceedances.

49. <u>Action Plan Payments</u>. Angelus shall make a payment of three thousand dollars ($3,000) to LA Waterkeeper on the day it transmits the Action Plan, if applicable. Angelus shall only pay a maximum amount of six thousand dollars ($6,000.00) per Reporting Year for the submittal of Action Plans. Payments shall be mailed certified U.S. mail with return receipt, overnight delivery, or by hand delivery to Los Angeles Waterkeeper, ATTN: Angelus Fibers Action Plan Payment, 120 Broadway, Suite 105, Santa Monica, CA 90401.

50. <u>Action Plan Contents</u>. Each Action Plan must include the following elements:

    a.   a table summarizing the Exceedance(s), i.e., pollutant(s), Table 1 limit(s), measured concentration(s), date(s), and discharge point(s);

    b.   a narrative discussion of pollutant sources potentially contributing to the Exceedance(s);

    c.   an assessment of the effectiveness of existing BMPs and/or BMP implementation, including a description of deficiencies (*if any*);

    d.   the identification of responsive BMPs (and/or BMP modification(s)) that will be taken to improve the storm water management practices to prevent any future Exceedance(s).

    e.   a schedule to implement any new and/or improved BMPs by the earliest practicable time, and no later than October 1 following submission of an Action Plan.

51. If the Action Plan requirement is triggered by storm water sampling results or visual observations (per paragraph 47) after July 1, 2023, in order to comply with paragraphs 48 and 50, Angelus' Action Plan shall include a proposal for installing a storm water treatment system (or systems) capable of treating any future storm water runoff generated by an 85th percentile, 24-hour storm event (as defined in the General Permit at section X.H.6) from the Facility. The determination of the 85th percentile,

24-hour storm event shall use the Analysis of 85th Percentile, 24-Hour Rainfall Depth Analysis Within the County of Los Angeles by the Los Angeles Department of Public Works, Water Resources Division, Hydrology Section. Such treatment system(s) shall include polymer-assisted coagulation, followed by settling and filtration. Angelus may use a technology of equivalent effectiveness demonstrated by independent data, i.e., not the manufacturer's own data.

52. <u>Action Plan Review</u>.  LA Waterkeeper shall have thirty (30) days from receipt of an Action Plan to propose revisions. Within thirty (30) days of receiving proposed revisions, Angelus shall consider each of LA Waterkeeper's proposed revisions to the Action Plan and accept them or timely request to meet and confer, in accordance with Section V.

53. <u>Action Plan Implementation</u>.

a. Angelus shall implement the Action Plan(s) adopted pursuant to this Consent Decree as an obligation of this Consent Decree;

b. Angelus shall diligently file and pursue all required local agency applications for permits and/or approvals for the BMPs included in any Action Plan as applicable. Angelus shall further diligently pursue the procurement of contractors, labor, and materials to complete all BMPs by October 1 following preparation of the Action Plan; and

c. Within thirty (30) calendar days after BMPs set forth in an Action Plan are implemented, Angelus shall revise the Facility SWPPP and/or Site Map(s) to include all BMP revisions or additions contained in the Action Plan, and shall provide LA Waterkeeper with a copy of such revised SWPPP and/or Site Map(s).

**G.    Employee Training**

54. <u>Training Program</u>. Within fifteen (15) calendar days of submitting its revised SWPPP to SMARTS, Angelus shall review and revise its employee training

program to ensure compliance with the requirements of this Consent Decree and the General Permit, including any training materials, as necessary, for implementation of the training program ("Training Program").

55. The Training Program shall provide: (a) that there be a sufficient number of employees delegated to achieve compliance with this Consent Decree and the General Permit; and (b) that these employees are properly trained to perform the required compliance activities under this Consent Decree and the General Permit.

56. The Training Program shall, at a minimum, include the following:

a. *Non-Storm Water Discharge Training*. Defendant shall train all non-clerical employees in the General Permit's prohibition of non-storm water discharges so that employees know what non-storm water discharges are, how to detect them, how to prevent them, and procedures for reporting non-compliance;

b. *Treatment System Training*. Defendant shall, as appropriate, train employees in the proper operation, management, and maintenance of any treatment system installed at the Facility if applicable;

c. *Employee Designation*. Defendant shall designate (by position/title) employees for specific SWPPP implementation responsibilities;

d. *Monitoring Training*. Defendant shall, as appropriate, train all individuals managing the Facility's treatment system(s) and/or collecting any samples at the Facility pursuant to this Consent Decree or the General Permit on the technical protocols, including any chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory; and

e. *Visual Observation Training*. Defendant shall provide training to all individuals performing visual observations at the Facility pursuant to this Consent Decree and the General Permit.

57. <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit.

58. Annual staff trainings shall be provided by a Qualified Industrial Storm Water Practitioner (as defined in Section IX.A of the 2015 Permit) familiar with the requirements of this Consent Decree and the General Permit. Training shall be repeated as necessary to ensure that employees are familiar with the requirements of this Consent Decree, the General Permit, and the Facility's SWPPP.

59. Angelus shall maintain training records to document compliance with paragraphs 55 through 58, and shall provide LA Waterkeeper with a copy of these records within fourteen (14) calendar days of receipt of a written request.

**C.    Compliance Monitoring and Reporting**

60. <u>Annual Site Inspections</u>. LA Waterkeeper may conduct one (1) annual site inspection for the purpose of ensuring compliance with this Consent Decree and the General Permit during the term of this Consent Decree.

61. <u>Dispute-Specific Site Inspections</u>. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a site inspection would be relevant to resolving the Parties' dispute, LA Waterkeeper may conduct additional site inspections during the term of the Consent Decree. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, additional site inspections.

62. <u>Site Inspection Notice</u>. Any site inspection shall occur Monday through Friday, excluding Federal and religious holidays, between 9:00 a.m. and 4:00 p.m. LA Waterkeeper will provide Defendant with no less than forty-eight (48) hours notice

prior to any inspection. Notice will be provided by telephone and electronic mail to the individual(s) designated below at paragraph 87.

63. <u>Inspection Details</u>. LA Waterkeeper shall limit inspection participants to three individuals, all of whom agree to execute the attached Release and Waiver (Exhibit E) prior to entering the Facility. LA Waterkeeper's representative shall be permitted to take photographs or video recordings, as well as collect storm water samples at the designated discharge points as identified in the then-effective SWPPP (i.e., the SWPPP containing the most recent revisions per paragraph 22) during any site inspection. Plaintiff shall not disclose any information (e.g., photos, videos, sample data) obtained as a result of a Site Inspection to any third party, expect that such information may be disclosed to: (a) a consultant for the limited purpose of assessing the Facility's storm water pollution control program; and/or (b) the District Court as part of enforcing compliance with this Consent Decree.

64. <u>Document Provision</u>. During the term of this Consent Decree, Defendant shall:

    a.   copy Plaintiff on all documents and written communications submitted to the Regional Water Quality Control Board, Region IV, the State Water Resources Control Board, and/or any Federal, State, local agency, county, or municipality that are related to compliance with the General Permit and/or this Consent Decree; and

    b.   provide Plaintiff with all documents and written communications related to compliance with the General Permit and/or this Consent Decree that are received by Defendant from any Federal, State, local agency, county, or municipality within fourteen (14) calendar days of receipt by Defendant.

    c.   Angelus shall provide all inspection records, including all photos (if any) required to be kept under this Consent Decree, including those specifically

required by paragraphs 35, 36, 37, 38, 46, and 47, to LA Waterkeeper within fourteen (14) calendar days of receiving a written request.

65. <u>Compliance Monitoring</u>. Defendant shall partially defray costs associated with Plaintiff's monitoring compliance with this Consent Decree by making a one-time payment of twelve thousand five hundred dollars ($12,500.00) to cover the three-year consent decree period referenced in paragraph 12. Payment shall be made within thirty (30) days of the Effective Date, and made to the Sycamore Law Attorney Client Trust Account, 1004 O'Reilly Avenue, San Francisco, California, 94129.

**A.    Environmental Mitigation and Litigation Fees and Costs**

66. <u>Environmental Mitigation Project</u>. Defendant shall make an environmental mitigation payment of fifty-two thousand five hundred dollars ($52,500.00) to the Rose Foundation for Communities and the Environment ("Rose Foundation"), an environmental non-profit organization. Payment shall be mailed via certified mail or overnight delivery within thirty (30) days of the Effective Date to: Rose Foundation, ATTN: LA Waterkeeper v. Angelus Western Fibers Receiver, 201 4th Street, Ste. 102, Oakland, California 94607.

67. Environmental mitigation payment funds will be used to support environmental projects related to water quality in the Southern California Bight, and designed to analyze, reduce, prevent, and/or otherwise mitigate the ecological or public health effects of industrial storm water and/or non-stormwater discharges.

68. <u>Plaintiff's Fees and Costs</u>. Defendant agrees to pay a total of seventy thousand dollars ($70,000.00) to reimburse LA Waterkeeper for costs, including expert/consultant fees and costs, and partially reimburse LA Waterkeeper for reasonable attorneys' fees incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. Payment shall be delivered by certified mail or overnight delivery within thirty (30) days of the Effective Date to: Sycamore

Law Attorney Client Trust Account, 1004 O'Reilly Ave, San Francisco, California, 94129.

## V.   DISPUTE RESOLUTION

69.  This Court shall retain jurisdiction over this matter for the term of this Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating any and all disputes among the Parties that may arise relating to any provision of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

70. <u>Meet and Confer</u>. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section V by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within fourteen (14) calendar days of the date of the notice in an attempt to fully resolve the dispute.

71. <u>Motion</u>. In the event that the Parties cannot fully resolve the dispute within thirty (30) calendar days of the meet and confer described in paragraph 70, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

72.  In resolving any dispute arising from this Consent Decree before the Court, the Parties shall be entitled to fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, <u>33 U.S.C.§ 1365(d)</u>, applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## VI.   RELEASE OF LIABILITY AND COVENANT NOT TO SUE

73. <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date, Plaintiff, on its own behalf and on behalf of its officers and

directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, insurers, landlords, lenders, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were or could have been raised based on the 60-Day Notice Letter and/or Complaint up to and including the termination date of this Consent Decree.

74. Nothing in this Consent Decree limits or otherwise affects either Party's rights to address or take any position that a Party deems necessary or appropriate in any informal or formal proceeding before the State Water Board, Regional Water Board, California EPA, U.S. EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act.

## VII.    MISCELLANEOUS PROVISIONS

75. <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation on disputed claims. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. The Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

76. <u>Counterparts</u>.  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy, electronic mail, and/or facsimile copies of an original signature shall be deemed to be originally executed counterparts of this Consent Decree.

77. <u>Authority</u>.  The undersigned representatives for Plaintiff and Defendant each certify that they are fully authorized by the Party whom they represent to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

78. <u>Construction</u>.  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

79. <u>Full Settlement</u>.  This Consent Decree constitutes a full and final settlement of this matter.

80. <u>Integration Clause</u>.  This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

81. <u>Severability</u>.  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

82. <u>Choice of Law</u>.  The laws of the United States shall govern this Consent Decree.

83. <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree. Any uncertainty and ambiguity shall not be interpreted against any one Party.

84. <u>Modification of the Consent Decree</u>.  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties. In the event that there is a dispute regarding a change, waiver, discharge, or termination of any provision(s), either Party may seek resolution from the court.

85. <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) calendar days of any assignment.

86. <u>Force Majeure</u>.  Either Parties' performance of any requirement of this Consent Decree shall be extended or modified in the case of a force majeure event as follows:

a. A "force majeure event" is any event arising from causes beyond either Party's control that prevents or delays the performance of any requirement of this Consent Decree despite its best efforts to fulfill the requirement;

b. The requirement to exercise "best efforts to fulfill the requirement" includes using good faith efforts to anticipate any potential force majeure event and good faith efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any delay to the greatest extent possible;

c. A force majeure event includes government orders or restrictions related to COVID-19 and comparable public health threats. Any Party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the force majeure event, and which by exercise of due diligence has been unable to overcome the failure to perform;

d. A force majeure event does not include normal inclement weather, a financial inability to perform, or employee negligence;

e. If Angelus seeks to avoid performance of any requirement of this Consent Decree on account of a force majeure event, it shall provide written notice to Plaintiff no later than ten (10) calendar days after the time that Angelus

first knew of, or by the exercise of due diligence, should have known of, a force majeure event. The notice shall state the anticipated duration of any delay, its cause(s), and propose an alternative schedule for performing the affected requirement(s);

f.   If Plaintiff agrees that a force majeure event has occurred, Plaintiff shall agree to extend the time for Angelus to perform the affected requirement(s) for the time necessary to complete those obligations; and

g.   If Plaintiff does not agree that a force majeure event has occurred or does not agree to the extension of time sought by Angelus, it may invoke the Dispute Resolution Procedures in Section V of this Consent Decree.

87.  <u>Correspondence</u>.  All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, overnight delivery, or by hand delivery to the following addresses:

<u>If to Plaintiff</u>:

Jesse C. Swanhuyser
Sycamore Law, Inc.
414 Olive Street
Santa Barbara, CA 93101
jesse@sycamore.law
(805) 689-1469

<u>If to Defendant</u>:

Ruben Castellón
RAF Law Group
811 Wilshire Blvd. Ste. 1050
Los Angeles, CA 90017-2649
rcastellon@raflawgroup.com
(213) 623-7515

With copies to:

Benjamin Harris
Staff Attorney
Los Angeles Waterkeeper
120 Broadway, Suite 105
Santa Monica, CA 90401
ben@lawaterkeeper.org
(310) 394-6162 ext. 102

With copies to:

Tom Rouchon
Greg Rouchon
Angelus Western Paper Fibers, Inc.
2474 Porter Street
Los Angeles, California 90021
rulado@aol.com
grrecysvs@aol.com
(213) 623-9221

Notifications of communications shall be deemed received three (3) calendar days after the date that they are postmarked and sent by first-class mail, or upon proof of delivery for overnight delivery, upon receipt when personally delivered, or upon delivery after acknowledgement of receipt by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

88. If for any reason the U.S. Department of Justice ("DOJ") or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) calendar days so that it is acceptable to the DOJ or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is acceptable to the DOJ or the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Settling Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry of final judgment.

/ / /

/ / /

/ / /

/ / /

1  IN WITNESS WHEREOF, the undersigned have executed this [proposed] Consent
2  Decree as of the date set forth below.

3  **APPROVED AS TO CONTENT**

4  LOS ANGELES WATERKEEPER                    ANGELUS WESTERN PAPER
5                                             FIBERS, INC.

6  by: _____                      by: _____
7      Bruce Reznik                               Greg Rouchon
       Executive Director                          President
8
9  Date: April 25, 2022                       Date: _____, 2022

10
11 **APPROVED AS TO FORM**

12 SYCAMORE LAW, INC.                          RAF LAW GROUP

13 by: _____                      by: _____
14     Jesse Swanhuyser                           Ruben Castellón
15     Attorney for Plaintiff                     Attorney for Defendant

16 Date: APRIL 25, 2022                        Date: _____, 2022

17

18 **IT IS SO ORDERED:**

19 Date: _____
20                                             _____
                                              PERCY ANDERSON
21                                             DISTRICT COURT JUDGE
                                              CENTRAL DISTRICT OF CALIFORNIA
22

23

24

25

26

27

28

IN WITNESS WHEREOF, the undersigned have executed this [proposed] Consent Decree as of the date set forth below.

**APPROVED AS TO CONTENT**

LOS ANGELES WATERKEEPER

by:   _____
      Bruce Reznik
      Executive Director

Date:   _____, 2022

ANGELUS WESTERN PAPER FIBERS, INC.

by:   _____
GregRouchon
President

Date: _____, 2022

**APPROVED AS TO FORM**

SYCAMORE LAW, INC.

by:   _____
      Jesse Swanhuyser
      Attorney for Plaintiff

Date:   _____, 2022

RAF LAW GROUP

by:   _____
Ruben Castellón
      Attorney for Defendant

Date:   __April 25__, 2022

**IT IS SO ORDERED:**

Date: July 12, 2022

_____
PERCY ANDERSON
DISTRICT COURT JUDGE
CENTRAL DISTRICT OF CALIFORNIA

**EXHIBIT A**
Approximate Perimeters of Main and Auxiliary Yards



**EXHIBIT B**
Storm Water Discharge Points at Main & Auxiliary Yards



Arrows indicate the location of discharge points, and do not reflect the direction of flow.

**EXHIBIT C**
Porter Street Sweeping Area



**EXHIBIT D**
Sweeping Effectiveness Photo Locations, Directions & Instructions



| Location 1: level photo facing due south at approx. 4 feet above ground | Location 3: level photo facing due east at approx. 4 feet above ground |
| --- | --- |
| Location 2: level photo facing due north at approx. 4 feet above ground | Location 4: level photo facing due west at approx. 4 feet above ground |

## EXHIBIT E

### ASSUMPTION OF RISK, RELEASE, AND INDEMNITY AGREEMENT

I am being given temporary entry to the Angelus Western Paper Fibers, Inc. facility ("Site") at:

> 2474 Porter Street, Los Angeles, California and the Auxiliary Yard located at the north-east corner of Porter Street.

In consideration of the forgoing, I agree to the following:

I acknowledge and agree that my entry onto the Site is entirely voluntary and at my own risk. Except for the intentional or grossly negligent acts or omissions of Indemnified Parties, I agree to indemnify, defend, hold harmless and release Angelus Western Paper Fibers, Inc., its shareholders, officers, directors, employees, agents, attorneys, successors, assigns, lenders, landlords, trustees, beneficiaries, and any other person(s) related to the Site or the activity at the Site (collectively "**Indemnified Parties**") from any and all demands, lawsuits, damages, claims, settlements, judgments, losses, liability, or expenses (including interest, attorney fees, and expert witness fees) for personal injury, illness (including potential exposure to COVID-19), death, or property damage, caused by, arising from or related to my entry onto the Site.

I confirm that at the time of the site inspection that I do not have any COVID-19 symptoms as outlined in current Centers for Disease Control guidance including: fever or chills, cough, shortness of breath or difficulty breathing, fatigue, muscle or body aches, headache, new loss of taste or smell, sore throat, congestion or runny nose, nausea or vomiting, and/or diarrhea.  I agree that if I have any of these symptoms at the time of the site inspection that I will not be allowed to participate in the site inspection and the site inspection will be cancelled.

I agree that I will wear personal protective equipment at the site inspection, including the following: protective eye gear (goggles or glasses), face covering (covering both nose and mouth), and closed toe shoes.  I also agree to maintain at least six feet social distance from all employees and representatives, including attorneys and experts.

I agree that I will not assign my rights or delegate my obligations under this Agreement and that there are no third-party beneficiaries.

I HAVE READ THIS DOCUMENT AND FULLY UNDERSTAND AND AGREE TO EACH AND EVERY PROVISION.

Signature: _____

Name: _____

Company/Organization: _____

Title: _____

Purpose of Visit: _____